[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 1, 1990, H. H. Holding Company, Inc. (plaintiff) was the owner of land and buildings located at and known as 89 Viens Street, New London, Connecticut, and Lot 5, Block 72 on Map 18 of the New London's Assessor's Office (subject property).
On October 1, 1988, the assessor of New London (defendant) determined that the fair market value of the subject property was $1,906,000 for ad valorem tax purposes. On October 1, 1990, the defendant's assessor assessed the subject property at a 70 percent value of $1,334,270. This valuation and assessment has continued through the assessment date of October 1, 1990.
On May 24, 1991, plaintiff instituted this appeal from the refusal of the defendant to change its assessment of the subject property for tax purposes as of October 1, 1990. By amendment dated July 26, 1995, the plaintiff included the assessment dates of October 1, 1991, October 1, 1992, October 1, 1993, and October 1, 1994. Plaintiff claims that defendant's assessor improperly determined the true and actual value of the subject property and has overvalued and overassessed it on the CT Page 10835 dates involved in this appeal. The defendant denies plaintiff's claims.
On or about August 27, 1992, plaintiff changed its name to NME Property Holding Company, Inc., but did not record the name change on the New London Land Records until February 16, 1994.
On August 23, 1993, by deed recorded in the New London Land Records on February 16, 1994, plaintiff transferred title to the subject property to First Healthcare Corporation.
On October 1, 1988, and at all times involved in this appeal, the subject property was used as a convalescent home known as Camelot Nursing Home (Camelot). Camelot was constructed in 1967. It is a one-story concrete block construction with brick veneer and reinforced poured concrete foundation. It consisted of 12 private rooms and 24 semi-private rooms containing 60 beds and provided the essential supporting facilities required of a nursing home. Defendant's Exhibit A, p. 29. The basement area, except for a staff conference room, was unfinished and used for storage of records, maintenance space, laundry and utilities. The overall condition of the subject property was good.
The subject property consists of 2.13 acres or 92,750 square feet and is zoned R-3 Residential. It is located in a quiet, predominantly single-family residential area with some multiple properties. It enjoys acceptable access to the interstate and other principal highways.
The highest and best use of the subject property is its existing nursing facility use.
Market value is the most probable price, as of a specified date, in terms of money, which a property should sell for, after reasonable exposure in an open and competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently and knowledgeably and for self interest and assuming the price is not affected by undue stimulus.
There are three generally recognized methods used to determine market value of a property for ad valorem tax purposes, to wit: (1) the sales comparison approach; (2) the CT Page 10836 cost approach; and (3) the income approach.
Plaintiff's expert, Edward F. Heberger (Heberger) disregarded the cost approach because the overall age and overall condition of the improvements precluded an accurate estimate of accrued depreciation. Although he did use the sales comparison approach, he felt this approach was less reliable than the income capitalization approach due to wide variations in condition and private pay potential among facilities. Plaintiff's Exhibit 1, p. 11.
Relying on the income direct capitalization approach, Heberger arrived at a fair market value of $1,490,726 for the subject property. After deducting $30,000 for an estimated value of the existing furniture, fixtures and equipment, Heberger arrived at a fair market value of $1,450,000 for the subject property as of October 1, 1988. Plaintiff's Exhibit A, pp. 14, 15 and 16.
Because Heberger felt that Camelot was a risky business, he estimated that the capitalization rate would be 11.5 percent to 12 percent. Utilizing both these rates, Heberger established a loaded capitalization rate of 13.5 percent, which rate included a tax factor of .01747.
In arriving at the net operating income of $201,248, used in developing the fair market value, Heberger deducted $311,095 as administrative and general expenses. Included in that amount was $105,913 which was sent to the owners of plaintiff in Tacoma, Washington and Lexington, Massachusetts. No evidence was offered as to what services, if any, the owners performed for said sum.
The defendant's appraiser, Robert J. Flanagan (Flanagan), utilizing the income approach (discounted cash flow), a recognized and accepted method for determining fair market value, indicated a market value of $1,924,000 for the subject property as of October 1, 1988. Defendant's Exhibit A, pp. 42-48. In his approach, Flanagan used administrative and general expenses of $240,133 rather than $311,095 used by Heberger. Flanagan felt that the $311,095 figure should be reduced by $70,962 (67 percent of the $105,913 sent to the owner's of plaintiff, as this expense was not considered typical. CT Page 10837
Although the court finds that the total sum of $105,913 is not a proper deduction in determining net operating income, it will allow a deduction of $240,133 as administrative and general expenses in Heberger's analysis for the purpose of determining whether the defendant's value of the subject property was excessive. Therefore, Heberger's estimated net operating income of $201,248 is increased by $70,962 which results in a net operating income of $272,210.
The court further finds that Camelot is not a risky business so as to justify Heberger's capitalization rate. However, for the purpose of continuing the above-mentioned comparison, the court will use Heberger's loaded capitalization rate of .135. Applying Heberger's loaded capitalization rate of 13.5 percent to the sum of $272,210 results in an indicated value of $2,016,370 for the subject property as compared to Flanagan's indicated value of $1,924,000.
It is noted that the subject property sold in 1984 for $2,400,000. Although this sale is remote in time to October 1, 1988, it is noted that real estate values were on an increase from 1984 to 1988.
The court finds that the plaintiff has failed to prove that the subject property was overvalued by the defendant's assessor as of October 1, 1988.
In property tax appeals, the taxpayer bears the burden of proving that the defendant's assessor's valuation is excessive (substantially overvalued). Stamford Apartments Co.v. Stamford, 203 Conn. 586, 589 (1987). It is only when the plaintiff sustains that burden that the court should ascertain the property's true and actual value. Id.
Proper deference must be given to the judgment and experience of assessors, and, unless their action is discriminatory or so unreasonable that property is substantially overvalued, their opinion and judgment should control in the determination of value for tax purposes. Stamford ApartmentsCo. v. Stamford, supra, 203 Conn. 589.
In May 1991, Camelot's licensed beds increased from 60 to 66 beds by converting six private rooms to semi-private rooms. The basement area was finished for administrative and general office-type uses and for a children's day care center CT Page 10838 licensed for twenty-five children.
As a result of the increase in beds, Heberger estimated a 7 percent increase in revenue over the revenue estimate in his original appraisal for 60 beds. He adjusted expenses, such as salaries, dietary, laundry, etc., and increased nursing care to $785,770, approximately 4 percent increase, and obtained a net operating income of $216,544. Applying his capitalization rate of .135 percent to this income, Heberger obtained an indicated market value for the subject property of $1,604,030. Deducting a depreciation of $66,000 for the 66 beds, Heberger arrived at a rounded market value of the $1,540,000 for the subject property as of October 1, 1991. Plaintiff's Exhibit 3.
In this analysis, Heberger increased administration and general expenses from the September 30, 1989 projection of $329,760 to $362,750, an increase of approximately 10 percent whereas he only increased the income projection by 7 percent. Plaintiff's Exhibit 3.
Heberger did not testify as to why or how much of this increased administration and general expenses was sent to the owners of plaintiffs in Tacoma, Washington and Lexington, Massachusetts. As previously stated, the court finds that such disbursement is not a proper deduction from net operating expenses.
As indicated above, Heberger's net operating income, as modified by the court, indicated a value of $2,016,370 for the subject property. The addition of six beds with the resulting increased income and a lesser increased expense would result in a higher estimated market value as of October 1, 1991, and the subsequent years involved in this appeal.
Flanagan indicated a market value of $2,145,000 for the subject property from the additional six beds. Defendant's Exhibit B.
The court finds that the plaintiff has failed to prove that the defendant's determination of the market value of the subject property as of October 1, 1988, and October 1, 1991, and the years subsequent thereto involved in this appeal was excessive. CT Page 10839
Accordingly, plaintiff's appeal is dismissed.
Paul M. Vasington State Trial Referee